UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

*****************************************
)
FLOR CHACH, ELSY HERNANDEZ,                )
DIGNA MENDOZA, PEDRO PACHECO,              )
CARLOS SIMAJ MORENTE, and                  )
GILBERTO VIEIRA, on behalf of themselves    )
and all others similarly situated,              )
)
             Plaintiffs,                    )
)
)
             v.                             )       Civil Action No.: 07-_____
)
)
MICHAEL BIANCO, INC., FRONT LINE           )
DEFENSE, INC., FRANCESCO INSOLIA,          )
GLORIA MELO, SUZANNE THOMPSON              )
AND MARGUERITE INSOLIA,                     )
)
             Defendants.                    )
)
*****************************************

## CLASS AND COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

### INTRODUCTION

1.      Defendants operate a leather goods and military equipment manufacturing facility in New Bedford, Massachusetts.  They employ or formerly employed Plaintiffs as factory workers, performing tasks such as marking, cutting, sewing, soldering, packing and shipping.  Defendants regularly and deliberately failed to pay Plaintiffs their regular wages, minimum wages and/or overtime pay as required by both state and federal law.

2.      Although Plaintiffs often worked for Defendants for more than 40 hours per week, performing the same or similar job duties throughout their working hours, Defendants frequently failed to pay Plaintiffs time-and-a-half for all of their overtime hours.  Defendants illegally and deliberately evaded the state and federal overtime laws by creating two separate corporations, Michael Bianco, Inc. ("MBI") and Front Line Defense, Inc. ("FLD"), and then splitting Plaintiffs' hours between the two corporations in a calculated effort to minimize the appearance of overtime hours worked.

3.      Defendants also illegally failed to pay Plaintiffs at all for some of their working time as a result of Defendants' policy and practice of making deductions from Plaintiffs' working time, greater than the actual amount of work time lost, when Plaintiffs clocked in slightly after the start time of their scheduled shifts or slightly before the end time of their scheduled shifts.

4.      Finally, Defendants illegally failed to pay Plaintiffs at all for some of their working time as a result of Defendants' policy and practice of paying Plaintiffs only until the end of their scheduled shifts, even though Plaintiffs frequently were required to stay longer at the factory.

5.      As a result, Plaintiffs bring this action on their own behalf and on behalf of all others similarly situated for their wages, as well as other related causes of action, under the Massachusetts Wage Act, the Fair Labor Standards Act and other State and Federal laws, rules, and regulations.

## JURISDICTION AND VENUE

6.      The Court's jurisdiction is based upon 29 U.S.C. § 216(b) (FLSA), 28 U.S.C. § 1331 (Federal Question) and 28 U.S.C. § 1367 (Supplemental).

7.      Venue is appropriate under 28 U.S.C. § 1391(b) and (c) (Substantial Part of the Events and Contacts).

## PARTIES

**Plaintiffs**

8.      Plaintiffs, FLOR CHACH, ELSY HERNANDEZ, DIGNA MENDOZA, PEDRO PACHECO, CARLOS SIMAJ MORENTE, and GILBERTO VIEIRA (the "Class Representatives") are residents of the Commonwealth of Massachusetts.

9.      Each of the Class Representatives is currently or was formerly employed by Defendants in Massachusetts.

**Defendants**

10.     Michael Bianco, Inc. ("MBI"), is a domestic, for-profit corporation organized under the laws of the Commonwealth of Massachusetts.

11.     Front Line Defense, Inc. ("FLD"), is a domestic, for-profit corporation organized under the laws of the Commonwealth of Massachusetts.

12.     The street address of MBI's registered office in its most recent annual report, filed with the Secretary of State on March 5, 2007, is 89 West Rodney French Boulevard, New Bedford, Massachusetts.  The street address of MBI's principal office in

2

its most recent annual report, filed with the Secretary of State on March 5, 2007, is 305 Nash Road, New Bedford, Massachusetts. The street address of FLD's registered office and its principal office in its most recent annual report, filed with the Secretary of State on February 26, 2007, is 89 West Rodney French Boulevard, New Bedford, Massachusetts. FLD also uses as business addresses 363 Brook Street, New Bedford, Massachusetts, and 305 Nash Road, New Bedford, Massachusetts.

13.     Francesco Insolia is presently, and has been at all times relevant to this Complaint, the President, the Treasurer and a Director of MBI, with an address of 3 Country Club Circle, Pembroke, Massachusetts.

14.     Gloria Melo is presently, and has been at all times relevant to this Complaint, the Secretary of MBI. Her current address on file with the Secretary of State is 135 Sprague Street, Fall River, Massachusetts. Ms. Melo is also the office manager and provided paychecks and other forms of remuneration to many of the Plaintiffs.

15.     Suzanne Thompson is presently, and has been at all times relevant to this Complaint, the President, the Treasurer and a Director of FLD. Her current address on file with the Secretary of State is 56 Sycamore Road, Squantum, Massachusetts. In various documents filed with the Secretary of State, Ms. Thompson also uses the address of 3 Country Club Circle, Pembroke, Massachusetts. Upon information and belief, Ms Thompson is Mr. Insolia's wife.

16.     Marguerite Insolia is presently, and has been at all times relevant to this Complaint, the Secretary and a Director of FLD. Her current address on file with the Secretary of State is 56 Sycamore Rd., Squantum, Massachusetts. In various documents filed with the Secretary of State, Ms. Insolia also uses the address of 3 Country Club Circle, Pembroke, Massachusetts.

## INDIVIDUAL ALLEGATIONS

17.     Plaintiff FLOR CHACH worked for Defendants from approximately August 2005 to approximately March 2007. Plaintiff Chach makes three general allegations: (1) During Plaintiff Chach's employment by Defendants, she regularly worked day shifts, paid by the MBI entity, and sometimes worked evening shifts, paid by the FLD entity. Her work week often totaled more than 40 hours, working in the same building and performing the same or similar tasks, but Defendants did not pay her time-and-a-half for many of her overtime hours; (2) Plaintiff Chach occasionally clocked in slightly late (often due to long lines at the time clock) or clocked out slightly early, but Defendants made deductions from her pay reflecting more than the actual amount of working time lost; and (3) Plaintiff Chach occasionally worked beyond the end of her scheduled shift, but Defendants did not pay her for this additional time.

18.     Plaintiff ELSY HERNANDEZ worked for Defendants from approximately August 2004 to approximately March 2007. Plaintiff Hernandez makes three general allegations: (1) During Plaintiff Hernandez's employment by Defendants,

she regularly worked day shifts, paid by the MBI entity, and frequently worked evening shifts, paid by the FLD entity.  Her work week often totaled more than 40 hours, working in the same building and performing the same or similar tasks, but Defendants did not pay her time-and-a-half for her overtime hours; (2) Plaintiff Hernandez frequently clocked in slightly late (often due to long lines at the time clock), but Defendants made deductions from her pay reflecting more than the actual amount of working time lost; and (3) Plaintiff Hernandez frequently worked beyond the end of her scheduled shift, but Defendants did not pay her for this additional time.

19.     Plaintiff DIGNA MENDOZA has worked for Defendants from approximately April 2005 to the present.  Plaintiff Mendoza makes two general allegations: (1) Plaintiff Mendoza occasionally clocked in slightly late (often due to long lines at the time clocks, but Defendants made deductions from her pay reflecting more than the actual amount of working time lost; and (2) Plaintiff Mendoza frequently worked beyond the end of her scheduled shift, but Defendants did not pay her for this additional time.

20.     Plaintiff PEDRO PACHECO worked for Defendants from approximately March 2005 to approximately March 2007.  Plaintiff Pacheco makes three general allegations: (1) During Plaintiff Pacheco's employment by Defendants, he regularly worked day shifts, paid by the MBI entity, and sometimes worked evening shifts, paid by the FLD entity.  His work week often totaled more than 40 hours, working in the same building and performing the same or similar tasks, but Defendants did not pay him time-and-a-half for his overtime hours; (2) Plaintiff Pacheco occasionally clocked in slightly late (often due to long lines at the time clock), but Defendants made deductions from his pay reflecting more than the actual amount of working time lost; and (3) Plaintiff Pacheco frequently worked beyond the end of his scheduled shift, but Defendants did not pay him for this additional time.

21.     Plaintiff CARLOS SIMAJ MORENTE worked for Defendants from approximately February or March 2005 to approximately March 2007.  Plaintiff Morente makes two general allegations:  (1) During Plaintiff Morente's employment by Defendants, he regularly worked day shifts for the MBI entity and sometimes worked evening shifts for the FLD entity.  His work week often totaled more than 40 hours, working in the same building and performing the same or similar tasks, but Defendants did not pay him time-and-a-half for his overtime hours; and (2) Plaintiff Morente frequently worked beyond the end of his scheduled shift, but Defendants did not pay him for this additional time.

22.     Plaintiff GILBERTO VIEIRA worked for Defendants from approximately April 2004 to approximately February 2006.  Plaintiff Vieira makes three general allegations:  (1) During Plaintiff Vieira's employment by Defendants, he regularly worked day shifts, paid by the MBI entity, and sometimes worked evening shifts, paid by the FLD entity.  His work week often totaled more than 40 hours, working in the same building and performing the same or similar tasks, but Defendants did not pay him overtime; (2) Plaintiff Vieira occasionally clocked in slightly late (often due to long lines

at the time clock), but Defendants made deductions from his pay reflecting more than the actual amount of working time lost; and (3) Plaintiff Vieira frequently worked beyond the end of his scheduled shift, but Defendants did not pay him for this additional time.

**<u>Employer</u>**

23.     MBI and FLD (together "MBI/FLD") jointly manufacture leather goods, including products such as handbags, travel bags, pocketbooks, backpacks, business cases and travel accessories, as well as military equipage, including Aircrew Integrated Recovery Survival, Armor Vest and Equipment (AIRSAVE), Combat Medic Vests, Combat Medic Resupply Bags, Aircrewman's Survival Vests, Modular Lightweight Load-Carrying Equipment Backpack Systems (MOLLE), which included Fighting Load Carriers, Molded Waistbelts, Buckles Sets, Radio Pouches, Molle Pack Frames, 40MM Pyrotechnic Pouches, Medical Sets, Medical Modular Pouches, Utility Belts, Holster/Leg Extenders and Hydrolink Conversion Kits, along with a variety of related accessories, such as pockets for knives, HEED, pistols and radios.

24.     At all times, MBI/FLD jointly employed Plaintiffs in the manufacture and assembly of its products.

25.     MBI and FLD have related officers (Francesco Insolia is President of MBI, and his wife, Suzanne Thompson, is President of FLD), as well as common management, supervisors, offices, and production facilities.  MBI/FLD held themselves out as engaged in the same enterprise.

26.     According to the webpage at www.michaelbianco.com/mainair.html, "Michael Bianco is an authorized Government Contractor cage code (08KH3)," a number shared by both MBI and FLD.

27.     The Plaintiffs all work, or worked, at the single manufacturing plant in New Bedford, at 89 West Rodney French Boulevard, New Bedford, Massachusetts, the facility where MBI/FLD conducts all of its manufacturing and administrative operations. This same facility also uses the addresses of 305 Nash Road, New Bedford, Massachusetts, and 263 Brook Street, New Bedford, Massachusetts.

28.     MBI and FLD were working to fulfill the same government contracts, and in connection with at least one such contract, executed on or around February 4, 2004 (the "Molle Contract"), both were noted as "Places for Performance."

29.     Until February 24, 2006, addresses for corporate officers and directors were listed on FLD's Annual Reports on file with the Secretary of the Commonwealth as 3 Country Club Cir., Pembroke, MA 02359.  This is the same address as that listed on the corresponding Annual Reports on file for MBI.

30.     Francesco Insolia served as the President, Treasurer and a Director of MBI at all times relevant to this Complaint.  Francesco Insolia and other members of the

management team of MBI, working on behalf of Mr. Insolia, directed the activities of the Plaintiffs during their working hours, including those hours paid by FLD.

**Failure to Pay Wages**

31.     Defendants hired Plaintiffs to serve in full-time, low-paying factory worker positions, such as markers, cutters, sewers, solderers, packers and shippers.

32.     At all times, Plaintiffs worked continuously, diligently and effectively on behalf of Defendants.

33.     Defendants knew that Plaintiffs frequently worked more than 40 hours per week for Defendants, but Defendants failed, refused and neglected to pay time-and-a-half for many of Plaintiffs' overtime hours, as required by state and federal law.

34.     In some instances, when employees worked more than 40 hours in a week, Defendants would deliberately divide the hours those employees worked between the two Defendant companies, MBI and FLD.  In such instances, many of the hours over 40 would be shown as work done for the second company and then paid out as regular wages in order to avoid paying Plaintiffs their overtime premium.

35.     Defendants' policy and practice was to make deductions from the working time of employees, including Plaintiffs, when they clocked in after the scheduled start time of their shifts or clocked out before the scheduled end time of those shifts.  These deductions were usually for more time than the actual amount of work time lost.  As examples, Defendants frequently deducted 15-30 minutes' pay when Plaintiffs clocked in 1-3 minutes after the beginning of their scheduled shifts; at other times, Defendants deducted 15 minutes' pay when they clocked out one minute before the end of their scheduled shifts.

36.     As a result of Defendants' deductions, Plaintiffs and other employees sometimes received less than $6.75 per hour for their work prior to January 1, 2007, and less than $7.50 per hour for their work after January 1, 2007.

37.     Frequently, the working time lost as a result of Defendants' deductions was time that should have been paid as overtime, since Plaintiffs had worked 40 hours or more during those weeks.

38.     Defendants supplied insufficient numbers of time clocks in the factory, resulting in long lines to clock in at the beginning and to clock out at the end of shifts.

39.     At times, Plaintiffs would arrive at the workplace well before the start of their scheduled shifts but would be unable to clock in until after the start of their scheduled shifts due to the long lines at the time clocks.

40.     Sometimes Plaintiffs would have to wait in line as long as half an hour after the end of their scheduled shifts in order to clock out.

41.     Defendants' policy and practice was to pay Plaintiffs only until the end of their scheduled shifts.  Any time that Plaintiffs spent working or waiting after the end of their scheduled shifts to clock out, as required by Defendants before leaving the factory, was not compensated.

42.     As a result of Defendants' failure to pay for the additional working time or waiting time required to clock out, Plaintiffs and other employees sometimes received less than $6.75 per hour for their work prior to January 1, 2007, and less than $7.50 per hour for their work after January 1, 2007.

43.     Frequently, the unpaid additional working time or waiting time at the end of the shifts was time that should have been paid as overtime, since Plaintiffs had worked 40 hours or more during those weeks.

44.     Defendants knowingly, willfully and in bad faith failed, refused and neglected to pay Plaintiffs properly and on a timely basis all of the wages due them, with either an evil motive or with a reckless disregard for Plaintiffs' rights.

45.     During all relevant years, Defendants constituted an enterprise engaged in interstate commerce, under the Fair Labor Standards Act and its regulations.  Defendants maintained annual gross sales of at least $500,000.  Defendants sold products to the Federal government and to individuals throughout the United States.  Defendants also purchased products, services and supplies from individuals and entities outside of Massachusetts, and Defendants used the US Postal Service.

46.     Throughout their numerous regular and overtime working hours, Plaintiffs conferred a measurable benefit upon Defendants.

47.     Others similarly situated to Plaintiffs have also worked for Defendants and have not received proper compensation.

48.     Plaintiffs have satisfied all prerequisites and conditions precedent necessary to seek remedy against Defendants by this action.

49.     Attached as Exhibit A are two letters from the Office of the Attorney General authorizing Flor Chach, Elsy Hernandez, Digna Mendoza, Pedro Pacheco, Carlos Simaj Morente and Gilberto Vieira, among others, to pursue their claims for unpaid wages through a private lawsuit in civil court.

50.     Attached as Exhibit B are Plaintiffs' Consent Forms.

51.     The Department of Defense and other government agencies contracted with Defendants for millions of dollars in contract payments in exchange for Defendants' agreement to manufacture certain goods and to make certain wage payments to Defendants' employees, including Plaintiffs.

52.     In or around 2001 and continuing through 2003, Defendants bid for, and ultimately received, a number of Department of Defense contracts, from the Defense Supply Center in Philadelphia, worth approximately ten million dollars, to manufacture certain products for the US military and to make payments of wages to Defendants' employees.  These contracts included, among others, the manufacture of Aircrew Integrated Recovery Survival, Armor Vest and Equipment (AIRSAVE), valued at more than $4.2 million, and the manufacture of Air Crewman Survival Vests, valued at more than $5.2 million.

53.     In or around 2004, Defendants bid for, and ultimately received, an Award/Contract to manufacture Modular Lightweight Load-Carrying Equipment Backpack Systems (MOLLE), which included Fighting Load Carriers, Molded Waistbelts, Buckles Sets, Radio Pouches, Molle Pack Frames, 40MM Pyrotechnic Pouches, Medical Sets, Medical Modular Pouches, Utility Belts, Holster/Leg Extenders and Hydrolink Conversion Kits.  The Award/Contract was executed on or around February 4, 2004 (the "Molle Contract").  It was valued at more than $72 million and required Defendants to manufacture those products and to make certain wage payments to Defendants' employees.

54.     The Molle Contract required Defendants, among other things, to remain in compliance with the Walsh-Healey Public Contracts Act.

55.     Some employees were told by MBI/FLD management and/or federal government authorities that MBI/FLD employees working on Department of Defense contracts were supposed to be paid at the rate of either $12 or $14 per hour for their work.

56.     Plaintiffs were intended as direct beneficiaries of the Molle Contract and other agreements with the Department of Defense and other government agencies.

57.     Plaintiffs worked continuously, diligently and effectively on behalf of Defendants, enabling Defendants' delivery of products to the government, and thus fulfilling Defendants' obligations under its agreements.

58.     Upon information and belief, the Department of Defense and other government agencies have made timely payments under their agreements with the Defendants, and have not been in default on their obligations.

## CLASS ACTION ALLEGATIONS

59.     Class Representatives bring this action on behalf of workers who are, or have been, employed by Defendants as factory workers, performing tasks such as marking, cutting, sewing, soldering, packing and shipping (together, the "Factory Workers").  The Factory Workers can be categorized and/or divided into the following classes:

60.     Class Representatives, with the exception of Plaintiff MENDOZA, bring this action on behalf of all Factory Workers who worked for Defendants for more than forty hours in any week during the three-year period immediately preceding the date on which this action was filed and who did not receive one-and-a-half times their regular rate of pay for all hours worked above forty hours during those workweeks (the "FLSA Overtime Class").

61.     Class Representatives, with the exception of Plaintiff MENDOZA, bring this action on behalf of all Factory Workers who worked for Defendants for more than forty hours in any week during the two-year period immediately preceding the date on which this action was filed and who did not receive one-and-a-half times their regular rate of pay for all hours worked above forty hours during those workweeks (the "State Overtime Class").

62.     Class Representatives bring this action on behalf of all Factory Workers who worked for Defendants during the three-year period immediately preceding the date on which this action was filed and who did not receive compensation for all hours worked (the "Unpaid Wages Class").

63.     Class Representatives bring this action on behalf of all Factory Workers who worked for Defendants during the six year period immediately preceding the date on which this action was filed and who were not paid the hourly rate (or overtime hourly rate) agreed to by the Factory Workers and Defendants and/or in an agreement between the Defendants and the United States government for the intended benefit of the Factory Workers (the "Contract Class").

64.     Class Representatives bring this action on behalf of all Factory Workers who worked for Defendants during the six year period immediately preceding the date on which this action was filed and who did not receive the fair and reasonable value for the services they rendered for Defendants (the "Quasi-Contract Class").

65.     Class Representatives bring this action on behalf of all Factory Workers who worked for Defendants during the six year period immediately preceding the date on which this action was filed and who did not receive just compensation for the services they rendered for Defendants (the "Unjust Enrichment Class").

66.     Upon information and belief, the claims of the identified Class Representatives are typical of the claims of the FLSA Overtime Class, the State Overtime

Class, the Unpaid Wages Class, the Contract Class, the Quasi-Contract Class, and the Unjust Enrichment Class (together, the "Class Members"). All Class Members worked in the same facility in New Bedford, and all served in factory worker positions, performing tasks such as marking, cutting, sewing, soldering, packing and shipping. All shared similar duties and were subject to some or all of the unlawful employment practices alleged in this Complaint. All were paid in the same manner and suffered similar injury.

67.    The size of the classes makes a class action both necessary and efficient. While the exact numbers of the class is unknown to Plaintiffs at the present time, Plaintiffs believe there are at least 500 similarly situated Factory Workers employed by Defendants. Members of the class are ascertainable but are so numerous as to make joinder impracticable.

68.    This case involves common questions of law and fact affecting the rights of all Class Members, including but not limited to: (a) the status of Plaintiffs as employees of Defendants under applicable state and federal laws, (b) whether Defendants employed Plaintiffs or suffered or permitted Plaintiffs to be employed in their facilities, (c) whether Defendants were a single enterprise and/or joint employers of Plaintiffs, and (d) the relief sought by Plaintiffs.

69.    The Class Representatives can adequately and fairly represent the interests of the Class Members, because their individual interests are consistent, not antagonistic to, the interests of the class. In addition, many of the Class Members lack the means and resources to secure legal assistance.

70.    Counsel for Plaintiffs possess the requisite resources and ability to prosecute this case as a class action and are experienced labor and employment attorneys who have successfully litigated complex cases on behalf of classes of individuals and cases involving issues similar to those at issue in this case.

71.    Counsel for Plaintiffs suffer no conflicts of interest with any of the Class Members.

72.    A class action is superior to other available methods for the fair and efficient adjudication of this matter. The following support this conclusion: (a) no individual has commenced litigation against these Defendants on this issue; (b) the enterprise implemented by Defendants is generally applicable to the Plaintiff class, making it appropriate to issue relief to the class as a whole; (c) common questions of law and fact predominate over any questions affecting only individual members of the class; and (d) the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards or conduct for Defendants.

## CLAIMS FOR RELIEF

## COUNT ONE
Fair Labor Standards Act

73.     At all times relevant to this Complaint, Defendants constituted either a single enterprise and/or joint employers of Plaintiffs and Class Members within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203(d)).

74.     At all times relevant to this Complaint, Plaintiffs and Class Members were "employees" of Defendants within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203(e)).

75.     At all times relevant to this Complaint, Defendants "employed" Plaintiffs and Class Members, suffering or permitting them to work within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203(g)).

76.     Defendants failed to pay time-and-a-half to Plaintiffs and Class Members for all hours for which overtime wages are required, in violation of the Fair Labor Standards Act (29 U.S.C. § 207).

77.     Defendants' failures to provide required compensation for all hours worked by Plaintiffs and Class Members were repeated, willful and intentional violations of the Fair Labor Standards Act (29 U.S.C. §§ 206 and 207), and were not made in good faith.

78.     As a result of Defendants violation of the Fair Labor Standards Act (29 U.S.C. §§ 206 and 207), Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial, along with liquidated damages, attorneys' fees and costs of litigation (29 U.S.C. § 216(b)).

## COUNT TWO
M.G.L. c. 151

79.     At all times relevant to this Complaint, Defendants were "employers" of Plaintiffs and Class Members within the meaning of the Massachusetts Wage Act (M.G.L. c. 149 and 151).

80.     At all times relevant to this Complaint, Defendants constituted a single employer and/or joint employers of Plaintiffs and Class Members within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

81.     At all times relevant to this Complaint, Plaintiffs and Class Members were "employees" of Defendants within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

82.     At all times relevant to this Complaint, Defendants employed Plaintiffs and Class Members, suffering or permitting them to work within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

83.     Defendants failed to pay time-and-a-half to Plaintiffs and Class Members for all hours for which overtime premiums are required, in violation of the Massachusetts Wage Act (M.G.L. c. 151).

84.     Such failures constituted outrageous conduct, made knowingly and willfully, because of Defendants' evil motive or reckless indifference to the Plaintiffs' and Class Members' rights.

85.     As a result of Defendants violation of the Massachusetts Wage Act, Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial, along with multiple damages, attorneys' fees and costs of litigation.

## COUNT THREE
### M.G.L. c. 149

86.     At all times relevant to this Complaint, Defendants were "employers" of Plaintiffs and Class Members within the meaning of the Massachusetts Wage Act (M.G.L. c. 149 and 151).

87.     At all times relevant to this Complaint, Defendants constituted a single employer and/or joint employers of Plaintiffs and Class Members within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

88.     At all times relevant to this Complaint, Plaintiffs and Class Members were "employees" of Defendants within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

89.     At all times relevant to this Complaint, Defendants employed Plaintiffs and Class Members, suffering or permitting them to work within the meaning of Massachusetts Wage Act (M.G.L. c. 149 and 151).

90.     Defendants failed to pay regular wages to Plaintiffs and Class Members for such work in violation of the Massachusetts Wage Act (M.G.L. c. 149).

91.     Defendants failed to pay overtime premiums to Plaintiffs and Class Members for such work in violation of the Massachusetts Wage Act (M.G.L. c. 151).

92.     Defendants failed to pay minimum wages to Plaintiffs and Class Members for such work in violation of the Massachusetts Wage Act (M.G.L. c. 151).

93.     Such failures constituted outrageous conduct, made knowingly and willfully, because of Defendants' evil motive or reckless indifference to the Plaintiffs' and Class Members' rights.

94.     As a result of Defendants violation of the Massachusetts Wage Act, Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial, along with multiple damages, attorneys' fees and costs of litigation.

## COUNT FOUR
Breach of Contract

95.     Defendants entered into an unambiguous and enforceable contract that requires Defendants to make payments on a timely basis to Plaintiffs in the form of regular wages, as well as overtime wages for all hours worked in excess of 40 hours a week, in exchange for services rendered to the company.

96.     Plaintiffs worked continuously, diligently and effectively on behalf of Defendants, fulfilling their contractual obligations to perform work.

97.     In breach of their contract with Plaintiffs, Defendants have failed to pay Plaintiffs as agreed.

98.     As a result of Defendants' breach of contract, Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial.

## COUNT FIVE
Quasi-Contract

99.     Plaintiffs conferred a considerable benefit upon Defendants by working many hours each week to ensure that the Defendants business ran smoothly.

100.    Defendants accepted Plaintiffs' services with the knowledge that they expected to be paid for these services.

101.    Plaintiffs provided these services with the reasonable expectation that they would be properly compensated.

102.    As a result, Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial.

## COUNT SIX
Unjust Enrichment

103.    Defendants have been unjustly enriched at the expense of Plaintiffs by receiving the benefit of Plaintiffs' services without paying them the proper compensation and by making improper payroll deductions.

104.    As a result, Plaintiffs and Class Members have incurred harm and loss in an amount to be determined at trial.

## JURY DEMAND

Plaintiffs request a trial by jury on their claims.

## DEMAND FOR JUDGMENT

WHEREFORE, Plaintiffs pray that this Court grant relief in their favor, and against Defendants on a joint and several basis, as follows:

A.    Award all Plaintiffs, including all class members, actual damages, liquidated or multiple damages, punitive damages and pre-judgment interest as a result of the wrongful conduct complained of herein;

B.    Award injunctive relief prohibiting Defendants from continuing to engage in the illegal practices described herein;

C.    Award all Plaintiffs, including all class members, their costs and expenses in this litigation, including reasonable attorneys' fees and expert fees;

D.    Require Defendants to provide an accounting to the Plaintiffs and to provide a mechanism for identifying and notifying Plaintiffs, including all class members, for the fair and equitable distribution of damages;

E.    Provide such other and further relief as the Court deems just and proper.

Respectfully submitted,
PLAINTIFFS
By their attorneys,

 /s/ Audrey R. Richardson_____
Audrey R. Richardson (BBO # 630782)
Greater Boston Legal Services
197 Friend Street
Boston, MA  02114
(617) 603-1662
Arichardson@gbls.org


__/s/ Philip J. Gordon_____
Philip J. Gordon (BBO# 630989)
Gordon Law Group, LLP
535 Boylston Street, 6th Floor
Boston, MA 02116
(617) 536-1800
Pgordon@gordonllp.com


__/s/ Phillip Kassel_____
Phillip Kassel (BBO #555845)
South Coastal Counties Legal Services
231 Main St., Suite 201
Brockton, MA
(508) 586-2110, ext. 25
PKassel@sccls.org


Dated: May 15, 2007